# George P. Gore
## v.
## George W. Campbell.

1. JUDGMENT AGAINST EVIDENCE.—The questions involved in this case are mainly of fact; one being the right of appellant to charge commissions on sales. This was maintained by appellant and denied by the consignor; but the fact that the consignor received from appellant monthly accounts of sales, in which commissions were charged, and made no objection to them, tends to show an agreement for such commissions, or an acquiescence therein on his part, and strongly to corroborate appellant's claim that such commissions were agreed upon.

2. SETTLEMENT.—It was claimed by appellant and denied by the consignor, that a full and final settlement was made, and the balance due the consignor paid. When such settlement is once shown, it cannot be impeached without clear and satisfactory evidence. In this case the evidence tending to impeach the settlement is conflicting, unsatisfactory, and insufficient to justify the court in disregarding the settlement.

APPEAL from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding. Opinion filed December 8, 1879.

Messrs. SHOREY & SHOREY, for appellant; cited Sammis v. Clark, 13 Ill. 544; Aldrich v. Dunham, 16 Ill. 403.

Mr. S. K. Dow, for appellee.

BAILEY, P. J. This was an action of assumpsit, brought by George W. Campbell, assignee in bankruptcy of Oliver Lippincott, against George P. Gore, to recover a balance claimed to be owing to said Lippincott from said Gore, growing out of certain dealings between them. A trial was had in the court below without a jury, resulting in a judgment in favor of the plaintiff for $2,000 and costs.

The principal ground upon which the defendant below seeks to have the judgment reversed is, that the finding of the court is against the evidence in the case. This presents a mere question of fact, the determination of which involves a consid-

eration of all the evidence in the record. We have carefully examined the evidence, and have reached the conclusion that the judgment should be reversed. The controversy involves an investigation of long and somewhat complicated accounts between the parties, and it would be of little service to the parties, and might prove an embarrassment on another trial, should we go into a discussion of the evidence and indicate the views we are inclined to take of it in detail. We shall limit ourselves, therefore to a brief statement of our conclusions in relation to one or two of the leading features of the case.

In June, 1874, the time these transactions commenced, Lippincott was engaged in dealing in large lots of army clothing, and Gore, the defendant, was at the same time engaged in the business of a wholesale auctioneer and commission merchant in Chicago. Lippincott first applied to Gore for a loan of money to enable him to carry his goods for the time being, said goods being designed for the winter market, and his application resulted in a loan of $10,000 for three months at one and one-half per cent. per month, Gore to furnish storage for the goods in his warehouse, pay the expense of cartage, etc., and hold the goods as security for the loan. It seems that there was an understanding that none of the goods were to be sold until September. During the fall of 1874, Gore advanced to Lippincott further sums of money, and also proceeded to dispose of said goods, both at auction and at private sale, and credited the proceeds to Lippincott's account. On all the goods so sold, Gore charged Lippincott eight and one-half per cent. commissions, said commissions amounting in the aggregate to the sum of $1,458.79. Gore's right to charge these commissions forms a principal item of the present controversy.

It is insisted by Lippincott that Gore had no authority from him to sell the goods, and on this point the testimony of these two men is in conflict. But Gore having exhibited in evidence a written consignment signed by Lippincott, whereby said goods were consigned to Gore, with authority to sell at private or public sale, without limit, we think the preponderance upon this point is clearly with Gore. While the sales were going on, Gore rendered to Lippincott from time to time accounts of

Gore v. Campbell.

sales, and also accounts current, showing the state of all the dealings between them, in which the eight and one-half per cent. commissions, were charged and deducted from the gross proceeds of the sales.   There is no satisfactory evidence that any objection was ever made by Lippincott to the accounts so rendered while said dealings were in progress, nor any protest made against the charge for commissions.   Gore testifies that it was understood that these commissions were to be charged. It also appears by the testimony of Gore and two other witnesses, that after the goods were sold and the dealings terminated, Gore and Lippincott met and settled all their matters.   At said meeting an account was presented by Gore, showing the balance claimed by him, and after allowing various modifications claimed by Lippincott, there appeared to be a balance in favor of Lippincott of eighty-eight cents, which balance was then and there assented to by Lippincott, and the amount paid to him.   Various collateral and incidental facts appear in evidence, corroborating this account, to which we cannot now allude.   The contradiction of this evidence of a settlement, rests mainly upon the unsupported testimony of Lippincott alone.   He denies the fact of a settlement, or that he was present at the time such settlement is claimed to have been made.   Considerable stress is laid by the plaintiff upon the appearance of one of the items in the statement of account, upon which the settlement is claimed to have been made.   One material word seems to have been changed, but the change is satisfactorily accounted for and explained by the person who made it.   He testifies that he made an error in writing it at first, but the error being immediately discovered, was at once corrected in the presence of all the persons who were witnesses of the settlement.

We think there is a clear preponderance of evidence tending to show a final settlement between the parties.   When such settlement is once shown, it cannot be impeached without clear and satisfactory evidence.   In this case, the evidence tending to impeach the settlement and show that the item of commissions as well as the other items allowed the plaintiff in the court below, were erroneously credited to the defendant, is conflicting

and unsatisfactory, and in our judgment, insufficient to justify the court in setting aside and disregarding the settlement.

It may further be remarked that the receipt by Lippincott of successive statements of accounts of sales wherein these commissions were charged, without objection, is of itself a strong circumstance tending to show an agreement for such commissions or an acquiescence therein on his part. His conduct in this respect strongly corroborates the evidence of Gore and disputes his own. The court below awarded the plaintiff the sum of $1,339.79, on account of over-charges on commissions. This finding was, in our opinion, so clearly against the preponderance of the evidence as to justify us in awarding a new trial.

An item of $183.50 was allowed the plaintiff for goods unaccounted for, which is not supported by evidence satisfactory to us. It is unnecessary for us to express any opinion as to the remaining items, but for the reasons above assigned, the judgment will be reversed and the cause remanded.

Judgment reversed.